NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| SONNY DESPOSITO, | : | CIV. NO. 22-2487 (RMB) |
| | : | |
| Petitioner | : | **OPINION APPLIES** |
| | : | **TO ALL ACTIONS** |
| v. | : | |
| | : | |
| WARDEN, FCI FORT DIX | : | |
| | : | |
| Respondent | : | |

_____

| | | |
|---|---|---|
| SONNY DESPOSITO, | : | CIV. NO. 22-5102 (RMB-AMD) |
| | : | |
| Plaintiff | : | **OPINION APPLIES** |
| | : | **TO ALL ACTIONS** |
| | : | |
| v. | : | |
| | : | |
| WARDEN, FCI FORT DIX | : | |
| | : | |
| Defendant | : | |

_____

RENÉE MARIE BUMB, Chief United States District Judge

These matters come before the Court upon the filings by Pro Se Petitioner/Plaintiff Sonny Desposito ("Petitioner"), an inmate confined in the Federal Correctional Institution in Fort Dix, New Jersey ("FCI-Fort Dix"). For the reasons that follow, this Court denies Petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging his loss of good conduct time after a hearing at FCI-Fort Dix on October 2, 2019.

1

I.      PROCEDURAL HISTORY

On May 25, 2021, Petitioner submitted a letter to the Court in Civil Action No. 14-1641 (MCA-LDW), an unrelated civil rights matter, disputing his loss of good conduct time at FCI-Fort Dix. *Desposito v. State of New Jersey, et al.*, 14-1641 (MCA-LDW) ("*Desposito I*") (D.N.J., Dkt. No. 71.) Petitioner alleged due process violations in connection with a prison disciplinary hearing on October 2, 2019, before DHO Hampton. (*Id.*) The Court severed the letter from Civil Action No. 14-1461 (MCA-LDW) and directed the Clerk to open a new habeas action under 28 U.S.C. § 2241, and to file the letter in the new action. (*Id.*, Dkt. No. 73.) Thus, Civil Action No. 22-2487 (RMB) ("*Desposito II*") was opened. On July 20, 2022, Respondent filed an answer in opposition to the habeas petition. (*Desposito II*, Dkt. No. 8.)

On August 11, 2022, Petitioner filed an emergency motion for a temporary restraining order in *Desposito II*, seeking to prevent DHO Hampton from violating his right to due process in a new, upcoming disciplinary hearing. (Dkt. No. 9.) Because the hearing had not yet occurred, the Court construed the request as a civil rights complaint for injunctive relief under 28 U.S.C. § 1331, and directed the Clerk to sever the motion and file it in a new action. (Order, Dkt. No. 10.) Thus, Civil Action No. 22-05102 (RMB-AMD) ("*Desposito III*") was opened on August 17, 2022, and the case was administratively terminated because Petitioner did not pay the filing fee or submit an application to proceed *in forma pauperis* ("IFP application")

under 28 U.S.C. § 1915(a). *Desposito III* (Order, Dkt. No. 2.) Petitioner did not seek to reopen this new case prior to his pending disciplinary hearing. However, on February 14, 2023, he filed a self-styled "Motion Request Reinstatement of Good Time Credit for 2241 Actual Innocence." *Id.* (Dkt. No. 3.) In this motion, he challenges his loss of good conduct time resulting from a prison disciplinary hearing held on August 23, 2022 before DHO Hampton. (*Id.* at 2.) The Court construes this motion as a new habeas petition under 28 U.S.C. § 2241, and the Court will direct the Clerk to open a new action and administratively terminate the action, subject to reopening upon Petitioner's payment of the $5.00 filing fee, pursuant to 28 U.S.C. § 1914(a).

In *Desposito II*, on September 23, 2022, Petitioner filed a reply brief, but he stated that he did not have all of the relevant documents and could not respond in full to the answer. (Dkt. No. 11.) On January 12, 2023, Petitioner filed a motion requesting permission to file a rebuttal in opposition to Respondent's answer. (Dkt. No. 12.) The Court granted this request (Order, Dkt. No. 13), but after Petitioner took no action for more than 90 days, the Court issued a Notice of Call for Dismissal for failure to prosecute. (Dkt. No. 14.) Petitioner responded that the only explanation for his failure to prosecute was that someone in the prison interfered with his mail, either incoming or outgoing. (Order, Dkt. No. 15.) Petitioner did not submit an additional reply brief. The Court will now address Petitioner's habeas

3

petition challenging his loss of good conduct time as a result of the prison disciplinary hearing at FCI-Fort Dix on October 2, 2019.[1]

## II. BOP DISCIPLINARY PROCEDURE

The BOP security regulations, under Code 113, prohibit the "possession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff." 28 C.F.R. § 541.3 (effective June 20, 2011 to November 17, 2020). When prison staff believe that an inmate has committed a prohibited act, staff will issue an incident report describing the incident and the prohibited act charged. 28 C.F.R. § 541.5(a). The inmate will ordinarily receive the incident report within 24 hours. *Id.* A different staff member will investigate and refer the incident report, if appropriate, to a Unit Discipline Committee ("UDC") for a hearing. 28 C.F.R. § 541.7. The UDC will automatically refer charges of "Greatest or High severity prohibited acts," such as Code 113, to a Discipline Hearing Officer ("DHO"). 28 C.F.R. § 541.7(a)(4). The DHO, an impartial decisionmaker who was not a victim, witness, investigator, or otherwise significantly involved in the incident, will hold a hearing and issue a written report explaining any sanctions imposed upon a finding of guilt. 28 C.F.R. § 541.8(b), (h). "DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located." 28 C.F.R. § 542.14(d)(2). The final level of

---

[1] All subsequent record citations are to the docket entries in *Desposito II*, Civil Action No. 22-2487 (RMB).

administrative review is to the Bureau of Prisons ("BOP") Central Office. 28 C.F.R. § 542.15(a).

## III.   BACKGROUND

Petitioner is incarcerated in FCI-Fort Dix, serving a 228-month sentence imposed by the United States District Court, Southern District of New Jersey on May 23, 2011, for bank robbery and other crimes. (Dobovich Decl., Attach. A, Dkt. No. 8-2 at 8-9.) At the time the answer in this matter was filed, Petitioner's projected release date was September 10, 2025. (*Id.* at 7.)

On September 5, 2019, at 11:00 p.m., BOP Officer Ryall issued Incident Report Number 3300336, charging Petitioner with "Possession of any drugs not prescribed by medical staff" in violation of Code 113 and "Possession of anything not authorized," in violation of Code 305. (Declaration of Keith Hampton ("Hampton Decl."), Ex. 1 at 5, Dkt. No. 8-1 at 8.) Officer Ryall described the events as follows:

> On 09/05/2019, at approximately 10:00 P.M., I Officer D. Ryall was conducting a cell search in Unit 5741 Room #239 during the 9:30 P.M. count. When entering the room I announced I will be performing a shakedown, all inmates in room #239 were present when entering. Every inmate consented to pat search and then exited the room, when searching the 3L locker of inmate Desposito, Sonny Reg. #85148-054, I found 1 pair of black and grey gloves with hardened knuckles. Also located under his mattress was a vitamin bottle containing 4 dime sized bags, and 3 paper folds of a green and brown leafy substance. I tested the substance with NIK TEST Kit E, resulting in a positive test result (Marijuana). I was able to identify the mattress and locker as inmate Desposito by his inmate I.D. located

> in his locker as well as 5741 bed book cards. East OPS.
> LT. was notified.

(Hampton Decl., Ex. 1, Dkt. No. 8-1 at 8.)  Lieutenant J. Tucker investigated the incident report, advised Petitioner of his rights throughout the disciplinary process, and delivered the incident report to Petitioner on September 6, 2019, at 10:34 a.m. (*Id.* at 8, 11.)  Petitioner declined to offer a statement, and Lieutenant Tucker found the charge valid and referred it to the UDC.  (*Id.* at 11.)  The UDC held a hearing on September 12, 2019, and Petitioner denied possession of the marijuana, stating "it's not mine," "it was in a common area," and "I have 2 years of clean drug test every month." (*Id.* at 8.)  The UDC referred the matter for a hearing before a DHO.  (*Id.*)

On September 12, 2019, Petitioner received notice of the DHO hearing to be held on the "NEXT AVAILABLE DOCKET" at FCI Fort Dix.  (*Id.* at 9.)  Petitioner signed the form "Inmate Rights at Discipline Hearing" acknowledging that he had been advised of his rights, including the right to call witnesses and to present documentary evidence.  (*Id.* at 10.)  Petitioner elected to have a staff representative, Case Manager E. Morales, represent him at the DHO hearing.  (*Id.* at 9.)  Petitioner also elected to have Correctional Systems Supervisor ("CSM") Espinoza as a witness to testify regarding Petitioner's possession of the gloves described in the incident report.  (*Id.*)

The DHO hearing was held on October 2, 2019 at 8:22 a.m.  (*Id.* at 4.)  E. Morales served as Petitioner's staff representative, as requested.  (*Id.*)  Petitioner acknowledged that he understood his rights and that he had received a copy of the

6

incident report. (Hampton Decl., Ex. 1, Dkt. No. 8-1 at 4.) Petitioner expressly waived his right to call a witness, and this waiver was acknowledged in writing by his staff representative, E. Morales. (*Id.* at 5, 16.)

At the hearing, Petitioner stated "the drugs are not mine." (*Id.* at 4.) Staff Representative E. Morales commented "I reviewed the DHO Packet to include all available evidence" and "I have no concerns about inmate Desposito['s] Due Process Rights." (*Id.*) In reaching his decision, the DHO considered the report by Officer Ryall, who conducted the random shakedown and discovered and tested the green and brown leafy substance, which tested positive for marijuana. (*Id.* at 5-6.) The DHO also considered photographs depicting a vitamin bottle containing dime size bags and paper folds of green and brown leafy substances, found by Officer Ryall under Petitioner's assigned bunk bed mattress. (*Id.* at 7.) The DHO addressed Petitioner's testimony that the marijuana was not his, and he explained that possession requires only having the object under one's dominion or control; ownership was not required. (*Id.*)

Based on the greater weight of the evidence, the DHO found Petitioner guilty of "Possession of any Narcotic, Marijuana, Drugs, Alcohol, Intoxicants, or Related Paraphernalia not Prescribed for the Individual by Medical Staff" in violation of Code 113. (*Id.* at 4-7.) In making this finding, the DHO found Petitioner untruthful and gave greater weight to Officer Ryall's statements and observations. (*Id.* at 7.) Officer Ryall acted strictly in the performance of his official duties; therefore, the DHO concluded Ryall had no incentive to make false accusations. (Hampton Decl.,

Ex. 1, Dkt. No. 8-1 at 7.) The DHO noted that Petitioner had not presented any evidence or information to suggest that the drugs belonged to someone other than himself, and the contraband was found under Petitioner's mattress. (*Id.*) On the charge of "Possession of Anything Not Authorized," Code 305, the DHO made no findings and imposed no sanctions. (*Id.* at 4-7.)

For the Code 113 violation, a "Greatest Severity Level Prohibited Act," the DHO imposed three sanctions: (1) disallowing 41 days of good conduct time; (2) ordering 60 days of disciplinary segregation (suspended for 180 days of good conduct); and (3) 365 days loss of commissary privileges. (*Id.* at 8); *see also* 28 C.F.R. § 541.4 (providing that loss of GCT is a mandatory disciplinary sanction with a 41-day minimum loss for Greatest Severity Level offenses). The DHO stated Petitioner's lack of willingness to accept responsibility for his actions contributed to the sanctions imposed, as well as the threat to the health and safety posed to inmates by possession of drugs, and for deterrence of future violations. (*Id.*)

Petitioner received a copy of the DHO report on October 21, 2019. (*Id.* at 7.) The DHO report contained the DHO's decision and the evidence and reasoning relied upon by the DHO. (*Id.*) The DHO form advised Petitioner of his right, under the BOP Administrative Remedy Program, to appeal the action within 20 calendar days. (*Id.*); *see also* 28 C.F.R. § 542.15. In his habeas petition, Petitioner seeks restoration of good conduct time, damages, expungement of the infraction, and for DHO Hampton's removal from employment at FCI-Fort Dix. However, if a due process violation is found, the only relief available is for the Court to order a new

8

DHO hearing.  *See*, *Bridge v. U.S. Parole Comm'n*, 981 F.2d 97, 105 (3d Cir. 1992) ("the appropriate judicial remedy when an agency exceeds its discretion is a remand to the agency for further proceedings consistent with the court's opinion") (citation omitted);  *Wolff v. McDonnell*, 418 U.S. 539, 554 (1974) (explaining that 42 U.S.C. § 1983 provides a remedy of damages for constitutional violations, and a writ of habeas corpus is the proper vehicle for speedier release from confinement upon restoration of good conduct time) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 498-500 (1974)).  Respondent submits that Petitioner failed to remedy errors in his attempts to exhaust BOP's administrative remedy program,[2] but Respondent seeks denial of the habeas petition on the merits, which the Court addresses below.

## IV.   DISCUSSION

### A.   Jurisdiction and Standard of Law

Prisoners have a constitutionally protected liberty interest in earned good time credits.  *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991) (citing *Wolff*, 418 U.S. 539, 556–57 (1974)).  District courts have subject matter jurisdiction under 28 U.S.C. § 2241 over federal prisoners' challenges to the loss of good time credit applied toward their sentences.  *Denny v. Schultz*, 708 F.3d 140, 143 (3d Cir. 2013).  When a disciplinary hearing may result in loss of earned good time credit, due process requires the following procedures:  (1) written notice of claimed violations at least 24 hours in advance of the hearing; (2) a written summary of evidence relied upon by

---

[2] Answer, Dkt. No. 8; Declaration of Corrie Dobovich, Dkt. No. 8-2.

the fact-finder in reaching its disciplinary decision; (3) an opportunity to marshal the facts and prepare a defense; (4) an opportunity to call witnesses and present documentary evidence in defense, when doing so will not be unduly hazardous to institutional safety or correctional goals; (5) inmate or staff assistance for inmates who are illiterate or situations where the complexity of the issue requires assistance for the inmate to collect and present evidence necessary to understand the case; and (6) an impartial decisionmaker. *Young*, 926 F.2d at 1399-1400; *Wolff,* 418 U.S. at 562-74. To comport with due process, the prison disciplinary officer's decision must be supported by "some evidence in the record." *Denny*, 708 F.3d at 144 (quoting *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)). The "some evidence" standard is an appellate standard of review for the district court, not a burden proof. *Id.* at 144 (citation omitted). If the decision has "some basis in fact" it meets the "some evidence" standard. *Id.* at 145 (quoting *Hill*, 472 U.S. at 456).

> B. **Whether Petitioner Received Written Notice of Claimed Violations at Least 24 Hours in Advance of the Hearing**

Petitioner argues that he was deprived of due process because he received a "call out" notice for his DHO hearing less than 24-hours before the hearing. (Pet., Dkt. No. 1 at 4.) Respondent correctly maintains that due process does not require 24-hour advance notice of the time of the DHO hearing, but rather 24-hour advance notice *of the charges against the inmate* before the DHO hearing. (Answer, Dkt. No. 8 at 13-14); *Wolff*, 418 U.S. at 565; *Campbell v. Warden Allenwood USP*, 808 F. App'x 70, 72-73 (3d Cir. 2020). Petitioner received notice of the charges when the incident

report was delivered to him on September 6, 2019, well in advance of the October 2, 2019 hearing. (Hampton Decl., Ex. 1, Dkt. No. 8-1 at 8, 11.)

Petitioner also alleges there was no investigation of the incident report. (Pet., Dkt. No. 1 at 7.) There is no due process right to an investigation of an incident report. However, 28 C.F.R. § 541.5(b), governing BOP disciplinary hearings, states a staff member will investigate an incident report after the prisoner receives it. Lieutenant J. Tucker indicated in writing that he performed an investigation, including review of the chain of custody logs and photo sheet of evidence, and Petitioner's chronological disciplinary log, which showed a prior infraction for Code 113 on August 17, 2017. (Hampton Decl., Ex. 1, Dkt. No. 8-1 at 8, 11.) In any event, harmless error review applies to procedural errors in the conduct of prison disciplinary hearings. *Elkin v. Fauver*, 969 F.2d 48, 53 (3d Cir. 1992). Petitioner has not demonstrated error by setting forth what an investigation would have revealed.

## C. Whether Petitioner Had an Opportunity to Marshal the Facts and Prepare a Defense

Petitioner makes two allegations relevant to his opportunity to marshal the facts and prepare a defense to the charge of unauthorized possession of drugs: (1) the incident report did not contain the names of all officers and inmates present when the contraband was found; and (2) DHO Hampton refused to let Petitioner's staff representative view the file. (Pet., Dkt. No. 1 at 4, 8.) Respondent contends that neither due process nor the BOP regulations require an incident report to name all of

11

those present during the incident, and Petitioner could have inquired before the hearing.  (Answer, Dkt. No. 8 at 15-16.)

The incident report states that Officer Ryall conducted the shakedown of Unit 5741, Room #239 around 10:00 p.m., during the 9:30 p.m. count, and all inmates were present and consented to a pat search.  (Hampton Decl., Ex. 1, Dkt. No. 8-1 at 8.)  Petitioner contests that he was present, but this is immaterial because the incident report states that all inmates exited the room before Officer Ryall found the gloves in Petitioner's locker and the marijuana under Petitioner's mattress.  Therefore, no inmates were in the room during the search.  Moreover, Petitioner likely knew the inmates who shared his room on that date, but even if he did not, his staff representative had an opportunity to obtain such information and interview the inmates before the hearing.  *See*, 28 C.F.R. § 541.8 (d)(2) ("The staff representative may also assist you by speaking with and scheduling witnesses, obtaining written statements, and otherwise helping you prepare evidence for presentation at the DHO's hearing.")  Petitioner does not claim that he wished to have the other inmates who shared Room #239 appear as witnesses at the DHO hearing.

Additionally, Petitioner was aware that another officer, known as "the Big Guy" was present during the search.  (Pet., Dkt. No. 1 at 5.)  Petitioner initially requested that he appear as a witness at the DHO hearing to testify that Petitioner

12

was authorized to have the gloves underlying the Code 305 charge. (Hampton Decl., Ex. 1, Dkt. No. 8-1 at 9.)[3]

Petitioner also alleges the DHO refused to allow Petitioner's staff representative to view "the file," telling Petitioner "there is nothing in there that matters," (Pet., Dkt. No. 1 at 8.) It is not clear what file Petitioner is referencing. Petitioner alleges that no investigation of the incident report was conducted. The DHO Report describes all evidence the DHO considered, and includes only the incident report, photo sheet of evidence, and Notice of Discipline Hearing before the DHO form. (Hampton Decl., Ex. 1, Dkt. No. 8-1 at 6.) On the DHO Report, there is a box to check if the DHO relied on confidential information that was not revealed to the inmate, and this box was marked "N/A." (*Id.* at 5, ¶ E.) Moreover, Petitioner's staff representative stated, "I reviewed the DHO Packet to include all available evidence" and "I have no concerns about inmate Desposito['s] … Due Process Rights." (*Id.* at 6, ¶ II(C)). In sum, the record does not support Petitioner's claim that he did not have the opportunity to marshal the facts, prepare a defense, or identify and call witnesses.

### D. Whether the Hearing Was Held Before an Impartial Decisionmaker

Petitioner raises several claims in support of his conclusion that DHO Hampton was not an impartial decisionmaker. (Pet., Dkt. No. 1 at 5-8.) Respondent

---

[3] The UDC Chairman wrote, on the "Notice of Discipline Hearing Before the (DHO)" form, that Petitioner wished to have a witness (a staff member called the Big Guy, according to the petition) testify "that I was in possession of the gloves and it was ok for me to have. He said he would verify with Lt.")

13

contends that none of these allegations have merit because "[t]he Third Circuit has [] long made clear that 'the requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge.'" (Answer, Dkt. No. 8 at 17) (quoting *Meyers v. Alldredge*, 492 F.2d 296, 306 (3d Cir. 1974); *see also Drabovskiy v. Allenwood*, 597 F. Appx 47, 49 (3d Cir. 2015)).  Similarly, BOP regulations provide for an impartial DHO who was "not a victim, witness, investigator, or otherwise significantly involved in the incident." 28 C.F.R. § 541.8(b).

The analysis begins with the presumption that administrative decisionmakers are impartial, "and only evidence of 'actual bias or a likelihood of bias' can support a due process claim."  *Park v. Temple Univ.*, 757 F. App'x 102, 106 (3d Cir. 2018) (quoting *Matter of Seidman*, 37 F.3d 911, 924-26 (3d Cir. 1994); *see also Withrow v. Larkin*, 421 U.S. 35, 47, 55, 58 (1975)).  The Court will consider each of Petitioner's allegations of bias.  First, Petitioner claims the DHO blackmailed him by dropping a charge in exchange for Petitioner not calling a witness.  (Pet., Dkt. No. 1 at 5.) Respondent submits that the charge of blackmail is insupportable because Petitioner waived the right to call a witness, whose testimony related only to the Code 305 charge for possessing gloves with hardened knuckles, and the DHO did not find Petitioner guilty of such charge or impose any sanctions.  (Answer, Dkt. No. 8 at 18-19.)

Upon review of the DHO Report, the offense code, and the summary of charges, the only code violation addressed by the DHO was Code 113, Possession of any drugs not prescribed by medical staff. (Hampton Decl., Ex. 1, Dkt. No. 8-1 at 4.) It is reasonable to infer that the DHO agreed to drop the Code 305 charge because Petitioner intended to have a staff member testify that Petitioner was authorized to have the gloves found in his locker. It is not reasonable to infer that the DHO "blackmailed" Petitioner to prevent him from calling any witnesses in defense of the Code 113 charge. The record indicates Petitioner sought only to call a witness concerning the Code 305 charge.

Second, Petitioner asserts the DHO was biased because he found staff credible based on the incorrect assumption that staff have no reason to lie in the performance of their jobs. (Pet., Dkt. No. 1 at 6.) Petitioner suggests that staff have reasons to lie about recovering contraband because they receive "diplomas" and other awards or benefits based on their job performance. (*Id.*) This allegation is insufficient to overcome the DHO's presumption that Officer Ryall was simply performing his job, which included searching for contraband. It is also fair for the DHO to assume an inmate has motive to lie about possessing unauthorized drugs, which constitutes a Greatest or High Severity Prohibited Act subject to loss of good conduct time.

Petitioner further attacks the DHO's impartiality because: (1) the DHO claimed Petitioner did not present evidence that the drugs were not his; (2) the DHO found Petitioner guilty despite the DHO's "concession" that Petitioner did not own the drugs; and that the DHO refused to consider Petitioner's statement that he had

15

tested negative for drugs. (Pet., Dkt. No. 7.) None of these allegations address the DHO's impartiality, but rather represent Petitioner's disagreement with the DHO's weighing of the evidence, credibility findings, and disagreement with the legal standard for finding that an inmate possessed contraband. "Ascertaining whether [the "some evidence"] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Hill*, 472 U.S. at 455. Moreover, the DHO acknowledged Petitioner's denial of owning the drugs but noted possession meant "under one's dominion and control," and underneath Petitioner's mattress fell within this definition. (Hampton Decl., Ex. 1, Dkt. No. 8-1 at 6.) This was not a concession of Petitioner's innocence. Assuming the DHO refused to consider the fact that Petitioner had tested negative for drugs, this fact does not absolve Petitioner from having unauthorized drugs under his dominion or control.

Finally, Petitioner alleges the DHO was biased because he has a reputation that "no prisoner wins," and that he made a comment to Petitioner's staff representative that he found prisoners "guilty every time." (Pet., Dkt. No. 1 at 7-8.) As Respondent points out, the DHO did not find Petitioner guilty of violating Code 305, a charge contained in the incident report but apparently dropped by the DHO, as evidenced by omission of the 305 charge in the DHO Report. (Hampton, Decl., Ex. 1, Dkt. No. 8-1 at 4 (offense code and summary of charges.) The record does not support Petitioner's claim that the DHO was impartial because he found prisoners guilty every time.

### E.     Whether Some Evidence Supports the DHO's Finding of Guilt

Petitioner contends that contraband found in a common area, a twelve-man room in general population, is not sufficient evidence to show possession of contraband. (Pet., Dkt. No. 1 at 4-5.) Under BOP Program Statement 5270.09,[4] which advises inmates of their responsibility to keep their areas free of contraband, Petitioner argues that he was selectively prosecuted for possession of contraband in a room shared with eleven other inmates.

Respondent maintains that constructive possession based on collective responsibility to keep the inmate's area free from contraband provides a sufficient basis in fact to find an inmate guilty of possessing contraband. (Answer, Dkt. No. 8 at 21-23) (citing *Reynolds v. Williamson*, 197 F. App'x 196, 199 (3d Cir. 2006), *Santiago v. Nash*, 224 F. App'x 175, 177 (3d Cir. 2007), and *Denny*, 708 F. 3d at 146)). Respondent distinguishes *Cardena v. Wigens*, 921 F. Supp. 286, 289 n.4 (E.D. Pa. 1996), relied on by Petitioner, where the court held contraband found in a common area shared by twelve inmates was not sufficient evidence of possession by one inmate. (*Id.* at 22.) Here, Respondent notes the contraband was found under Petitioner's mattress. (*Id.* at 23.) Although other inmates had access to the mattress, it was property specifically assigned to Petitioner, not the other inmates. (*Id.*)

---

[4] Petitioner erroneously cited to BOP Program Statement 5270.07. The inmate discipline program is governed by Program Statement 5270.09. The Court will address Petitioner's argument with respect to Program Statement 5270.09. Available at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query.

The Court finds that discovery of the contraband under Petitioner's assigned mattress in a twelve-man room, in combination with the prison policy that inmates are responsible for keeping their areas free from contraband, provides some basis in fact for the DHO to find Petitioner guilty of violating Code 113.  *See*, *Donahue v. Grondolsky*, 398 F. App'x 767, 773 (3d Cir. 2010) (finding sufficient evidence where contraband was found taped to the back of the petitioner's desk drawer, although numerous inmates could access the area); *Santiago v. Nash*, 224 F. App'x 175, 177 (3d Cir. 2007) (finding sufficient evidence of possession of contraband found taped to the frame of the petitioner's bunk, an area the petitioner was responsible for keeping contraband-free); *Rodriguez v. Lindsay*, 498 F. App'x 70, 72 (2d Cir. 2012) (finding an inmate's bunk, although in an open dormitory where 120 inmates had access, was not a "common area" but instead a personal living space where the inmate was responsible for keeping it free from contraband).  Furthermore, the fact that the contraband was found under Petitioner's mattress provides a nonarbitrary basis for charging only Petitioner, not all of his cellmates, with possession.  This defeats Petitioner's claim of selective prosecution.  *See*, *United States v. Gist*, 382 F. App'x 181, 183 (3d Cir. 2010) ("Although prosecutors enjoy wide discretion, they may not prosecute based on a defendant's "race, religion, or other arbitrary classification." (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citations and quotation marks omitted)).  There was sufficient evidence before the DHO to find Petitioner guilty of possessing an unauthorized drug.

### F. Whether BOP Program Statement 5270.09 is Unconstitutionally Vague

Petitioner's final argument is that BOP Program Statement 5270.09 is unconstitutionally vague because it does not define the "area" an inmate is required to keep free from contraband. (Pet, Dkt. No. 1 at 9.) Respondent argues that the BOP Program Statement is only a guidance document that is not subject to void-for-vagueness challenges because it does not define a criminal offense or fix the permissible sentences for criminal offenses. (Answer, Dkt. No. 8 at 23-24) (citing *Beckles v. United States*, 137 S. Ct. 886, 892 (2017); *Ryan v. Scism*, 474 F. App'x 49, 52 (3d Cir. 2012); *Patel v. Zenk*, 447 F. App'x 337, 340 (3d Cir. 2011)).

BOP Program Statement 5270.09, Appendix C, ¶ 4, Inmates Rights and Responsibilities, states: "It is your responsibility . . . to keep your area free of contraband." The void-for-vagueness doctrine is inapplicable to this internal guidance for federal prisoners because it is not a penal statute and it does not fix a sentence for a criminal sentence. *Beckles,* 580 U.S. at 262; *Wilborn v. Mansukhani*, 795 F. App'x 157, 164 (4th Cir. 2019) (finding BOP Program Statement not subject to void-for-vagueness challenge). In any event, in context of the Inmate Rights and Responsibilities in which this guidance appears, the term "area" clearly encompasses the mattress assigned to a prisoner, one of the few places that does not have to be shared with other inmates. Therefore, Petitioner's void-for-vagueness challenge to Program Statement 5270.09 fails.

## V. CONCLUSION

For all of the reasons stated above, Petitioner was provided all due process protections required for his October 2, 2019 prison disciplinary hearing at FCI-Fort Dix. Therefore, the Court will deny Petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2241 in *Desposito II*, Civil Action No. 22-2487 (RMB). The Court will also direct the Clerk to sever Petitioner's "Motion Request Reinstatement of Good Time Credit for 2241 Actual Innocence" from *Desposito III*, Civil Action No. 22-5102 (RMB-AMD), and open a new action, filing the motion as a petition for writ of habeas corpus under 28 U.S.C. § 2241; and administratively terminate the new action, subject to reopening upon Petitioner's payment of the $5.00 filing fee, pursuant to 28 U.S.C. § 1914(a).

Date: **September 22, 2023**

                                        s/Renée Marie Bumb
                                        **RENÉE MARIE BUMB**
                                        **United States District Judge**